UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT ABRAM MEYER, III, | ) | CIVIL ACTION NO. 1:19-CV-706 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| ANDREW SAUL,[1] | ) | |
| Defendant | ) | |

MEMORANDUM OPINION

I.    INTRODUCTION

Plaintiff Robert Abram Meyer, III, an adult individual who resides within the

Middle District of Pennsylvania, seeks judicial review of the final decision of the

Commissioner of Social Security ("Commissioner") denying his application for

supplemental security income under Title XVI of the Social Security Act.

Jurisdiction is conferred on this Court pursuant to 42 U.S.C.

§1383(c)(3)(incorporating 42 U.S.C. §405(g) by reference).

This matter is before me, upon consent of the parties pursuant to 28 U.S.C.

§ 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 7).   After

---

[1] Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019. He is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).  *See also* Section 205(g) of the Social Security Act, 42 U.S.C. §405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).  The caption in this case is amended to reflect this change.

reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final decision is not supported by substantial evidence. Accordingly, the Commissioner's final decision is VACATED and this case is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) to conduct a new administrative hearing.

## II.    BACKGROUND & PROCEDURAL HISTORY

On September 25, 2012, Plaintiff filed an application for benefits. (Admin. Tr. 40). That application and the relevant administrative decisions are not part of this record. However, Plaintiff alleges that an ALJ determined, based on that application, that Plaintiff met the medical qualifications for benefits. *Id.* Plaintiff was immediately disqualified from receiving benefits for a period of thirty-two months due to excess resources—a savings account that had been established by his parents. *Id.* Plaintiff also alleges his benefits should have started automatically in December 2015 without having to reapply. *Id.* When he did not start receiving benefits, Plaintiff apparently contacted Social Security and was instructed to complete a new application. *Id.*

On March 14, 2016, Plaintiff protectively filed an application for supplemental security income under Title XVI of the Social Security Act. (Admin.

Tr. 18).  In this application, Plaintiff alleged he became disabled beginning February 1, 2008, when he was thirteen years old. (Admin. Tr. 27). Plaintiff was twenty-one years old on the date he filed his application. He alleges that he is disabled due to the following conditions: Asperger syndrome, Tourette syndrome, and Autism. (Admin. Tr. 140). Plaintiff alleges that the combination of these conditions affects his ability to remember/memorize, complete tasks, concentrate, understand, follow instructions, and get along with others. (Admin. Tr. 158). Plaintiff has at least a high school education. (Admin. Tr. 27). Plaintiff has no past relevant work experience. *Id.*

On June 23, 2016, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 18). On August 2, 2016, Plaintiff requested an administrative hearing. *Id.*

On November 21, 2017, Plaintiff, assisted by his counsel, appeared and testified during a fifteen-minute hearing before Administrative Law Judge Randy Riley (the "ALJ"). *Id.* On February 7, 2018, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 28). On March 14, 2018, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 121).

On February 25, 2019, the Appeals Council denied Plaintiff's request for review.  (Admin. Tr. 1).

On April 25, 2019, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision denying the application is not supported by substantial evidence, and improperly applies the relevant law and regulations. *Id.* As relief, Plaintiff requests that the Court vacate the ALJ's decision denying Plaintiff's application and award benefits and provide any other relief the Court deems justified. *Id.*

On June 26, 2019, the Commissioner filed an Answer. (Doc. 4). In the Answer, the Commissioner maintains that the decision holding that Plaintiff is not entitled to disability insurance benefits was made in accordance with the law and regulations and is supported by substantial evidence. *Id.* Along with her Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 5).

On November 30, 2019, Plaintiff's filed a Brief in Support. (Doc. 12). Attached to that Brief, Plaintiff included an April 2018 mental RFC assessment from treating psychiatrist Karen Medzoyan, M.D. that was not before the ALJ when he issued his decision.[2]  On December 13, 2019, the Commissioner filed his Brief in

---

[2] When a claimant seeks to rely on evidence that was *not* before the ALJ the District Court may remand "only if the evidence is new and material and if there was good cause why it was not previously presented to the ALJ." *Matthews v. Apfel*, 239 F.3d

Opposition. (Doc. 13).  Plaintiff did not file a reply. This matter is now ripe for decision.

## III.   STANDARDS OF REVIEW

### A.   SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir.

---

589, 593 (3d Cir. 2001). Although Plaintiff attempts to rely on this evidence in support of several arguments, he has not adequately developed the issue of whether this opinion is material or whether there is good cause as to why it was not presented to the ALJ.

1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

B.   STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a).[3] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant

---

[3] Throughout this Opinion, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on February 7, 2018.

is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 2 U.S.C. § 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by reference); 20 C.F.R. § 416.912(a); *Mason*, 994 F.2d at 1064.  Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. § 416.912(b)(3); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

IV.   DISCUSSION

Plaintiff raises the following four issues in his brief:

(1)   Whether the Administrative Law Judge erred and abused his discretion by failing to consider the limitations in Plaintiff's residual capacity from his Asperger's Syndrome, autism spectrum disorder, Tourette's Syndrome, depressive disorder, and anxiety disorder, all of which were considered to be severe impairments by the Administrative Law Judge.

(2)   Whether the Administrative Law Judge erred and abused his discretion in setting forth his determination of Plaintiff's residual functional capacity in light of the opinions of Plaintiff's treating source, Dr. Karen Medzoyan, which included a Residual functional Capacity Evaluation, which opinion was not afforded sufficient weight, as opposed to the opinion of the state agency medical consultant.

> (3)  Whether the Administrative Law Judge erred and abused his discretion in failing to consider Plaintiff's conditions under the Listings Under 12.02, 12.04, 12.06, 12.08, 12.10 or 12.11, particularly in light of the highly supportive environment that Plaintiff had while in school, which included inpatient treatment, vocational rehabilitation counseling, job coaching services and other intensive therapeutic services.

> (4)  Whether the Administrative Law Judge properly considered whether or not Plaintiff's benefits could be restarted, after a period of disqualification due to resources, as opposed to considering this claim as a new application.

(Doc. 12, pp. 1-2).

A.    THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between March 14, 2016 (Plaintiff's application date) and February 7, 2018 (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 20). At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: Asperger's syndrome, autism spectrum disorder, Tourette's syndrome, depressive disorder, and anxiety disorder. (Admin. Tr. 20). The ALJ also found that, during the relevant period, Plaintiff had a medically determinable non-severe impairment due to protein C deficiency. *Id.* At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or

medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart

P, Appendix 1. (Admin. Tr. 21).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ

found that, during the relevant period, Plaintiff retained the RFC to engage in all

ranges of work work as defined in 20 C.F.R. § 416.967 except that:

> The claimant is limited to performing simple, routine, repetitive tasks
> in a work environment free from fast paced production, involving only
> simple work-related decisions with few, if any, work place changes, no
> interaction with the public, occasional interaction with coworkers but
> no performance of tandem tasks, and occasional interaction with
> supervisors.

(Admin. Tr. 23).

At step four, the ALJ found that Plaintiff had no past relevant work

experience. (Admin. Tr. 27). At step five, the ALJ found that, considering Plaintiff's

age, education and work experience, Plaintiff could engage in other work that existed

in the national economy. *Id.* To support his conclusion, the ALJ relied on testimony

given by a vocational expert during Plaintiff's administrative hearing and cited the

following three (3) representative occupations: bakery worker, conveyor line (DOT

#524.687-022); agricultural produce sorter (DOT #529.687-186); agricultural

produce washer (DOT #529.685-258). (Admin. Tr. 27-28).

B.   WHETHER THE ALJ PROPERLY EVALUATED THE MEDICAL OPINION
EVIDENCE OF RECORD

On July 27, 2015, treating psychiatrist Karen A. Medzoyan, M.D. wrote the

following letter:

> This letter is in response to your request for a more complete detailed
> summary of the treatment I have provided for Mr. Robert Meyer III in
> order to provide documentation of his mental incapacitation due to his
> mental illnesses. Mr. Robert Meyer III has been under my care since
> May 2008 for medication management.
>
> At the time of my initial psychiatrist evaluation of Robert at age 13
> years old, he was diagnosed with Asperger's Disorder (299.80),
> Obsessive Compulsive Disorder (300.3) and Depressive Disorder NOS
> (311.00). He also had previously been diagnosed with Asperger's
> Disorder and Tourette's disorder by a pediatric neurologist. His
> interpersonal difficulties had onset with the transition from elementary
> school to middle school. Throughout elementary school, he had no
> significant behavior problems and had adequate per relations and good
> grades (As and Bs). However, with the transition to middle school for
> 6th grade he became the target of getting bullied by peers to the degree
> that he was getting pushed down and shoved against lockers. He was
> perceived as odd and eccentric by peers, which made him an easy target
> for bullying. In 7th grade he had increased anxiety and difficulties
> coping with the stress of social situations in school and was again the
> target of getting bullied by peers. This developed into a truancy
> problem due to school refusal because of his school-related anxieties.
> To alleviate the school related anxiety and school refusal issue, his
> parents switched him to private school, Lebanon Catholic School, in
> February 2006 but he continued to experience social difficulties and
> poor peer relations (again getting teased by peers) and escalating school
> anxiety such that his parents switched him to another private school,
> New Covenant Christian School, in November 2007. He was
> hospitalized at the Meadows on the inpatient child and adolescent
> psychiatry unit in March 2007 due to suicidal ideation and anger
> outbursts which were occurring at home and at school. When frustrated,

Robert would lash out at his peers such as throwing a book at a female classmate, striking her in the head and other act of aggression. Due to his aggressive behaviors, several parents at the private school signed a petition for Robert to be expelled due to "violent behaviors towards other students such as slapping, kicking, throwing objects or swearing."

In 6th grade Robert was evaluated by a pediatric neurologist and was diagnosed with Tourette's Disorder due to development of vocal and motor ticks including clicking sounds, throat clearing, eye twitching and lip smacking.

September 2008, Robert was enrolled in New Covenant Christian School but he had a late start to the school year because the school stipulated he could not return without a TSS (Therapeutic Staff Support). He continued to struggle with explosive anger outbursts at school and at home when frustrated. At this time he was medicated with sertraline 37.5mg daily. With BHRS services in place, Robert had regular school attendance and grades improved to As and Bs with improved interpersonal functioning with teachers and classmates.

In April 2011, Robert experienced a moderate to severe episode of depression (given the additional diagnosis of Major Depressive Disorder) with school refusal, feeling deeply sad, intermittently suicidal, irritable with increased anxiety, verbal aggression, and poor energy. The school accommodated him with a form of Cyber School. He was admitted to Philhaven's Adolescent Day Program from August 29, 2011 through September 20, 2011 and while in treatment Abilify was added as a mood stabilizer and sertraline was titrated to 200 mg daily treat his depression. Due to school refusal, his educational plan was modified from half day CTC for criminal justice to full day Cyber School. By May 2012 he experienced increased anxiety and passive thoughts of suicide and he was recommended to initiate outpatient therapy since BHRA services were terminated. His academics in Cyber School were sub-par due to poor motivation and incomplete assignments.

For Robert's senior year of high school, he was accepted into the Project Search Program but at the last minute he decided to drop out

and do Cyber School instead. BHRA services were again implemented through TW Ponessa, which terminated in July 2013 after high school graduation. His post graduation job plan was job assistance through OVR. He was unable to find employment and by August 2013 experienced another episode of severe depression with thoughts of suicide which were passive in nature as well as increased anxiety. After failing his driver's exam he returned home and punched several holes in the wall in a temper outburst.

Since high school graduation, Robert had to continue to live at home with his parents and he remained unemployed for several years until he recently found part time employment this summer doing janitorial work at Maple Press, with the assistance of his job coach. Due to his degree of social deficits and chronic mood disorder, I do not believe that Robert is capable of sustained full time employment. Furthermore, I do not believe he would be able to live independently at this time, although this can be reassessed in the future. Please find the enclosed original psychiatric evaluation for your reference as well as the recent medication supervision notes from 2015.

(Admin. Tr. 326-328).

The ALJ gave "little" weight to Dr. Medzoyan's letter. In doing so he explained:

However, the undersigned assigns little weight to the claimant's treating psychiatrist, Karen Medzoyan, M.D., who opined in July of 2015 that the claimant's mental impairments prohibited him from living independently or sustaining full time employment (Exhibit B4F/3-5). While Dr. Medzoyan is a highly trained psychiatrist and her opinion is based on her treating relationship with the claimant, her opinion was rendered many months prior to the period at issue and is only a vague declaration that does not contain any specific limitations in work-related terms (Exhibit B4F/3-5). Moreover, Dr. Medzoyan's opinion is inconsistent with the fact that the claimant stopped receiving any type of treatment for his mental impairments in May of 2016, roughly ten

months after her opinion was written and has not received any treatment
again since then (Exhibit B11F).

(Admin. Tr. 26).

The Commissioner's regulations define medical opinions as "statements from
acceptable medical sources that reflect judgments about the nature and severity of
your impairment(s), including your symptoms, diagnosis and prognosis, what you
can still do despite impairment(s), and your physical or mental restrictions." 20
C.F.R. § 416.927(a)(1). Regardless of its source, the ALJ is required to consider
every medical opinion received together with the rest of the relevant evidence.  20
C.F.R. § 416.927(b).

In deciding what weight to accord competing medical opinions, the ALJ is
guided by factors outlined in 20 C.F.R. § 416.927(c). Under some circumstances,
the medical opinion of a "treating source" may even be entitled to controlling weight.
20 C.F.R. § 416.927(a)(2) (defining treating source); 20 C.F.R. § 416.927(c)(2)
(explaining what is required for a source's opinion to be controlling).

Where no medical opinion is entitled to controlling weight, the
Commissioner's regulations direct the ALJ to consider the following factors, where
applicable, in deciding the weight given to any non-controlling medical opinion:
length of the treatment relationship and frequency of examination; nature and extent
of the treatment relationship; the extent to which the source presented relevant

Page 15 of 22

evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention.  20 C.F.R. § 416.927(c).

Furthermore, the ALJ's articulation of the weight accorded to each medical opinion must be accompanied by "a clear and satisfactory explication of the basis on which it rests."  *Cotter*, 642 F.2d at 704. This principle applies with particular force to the opinion of a treating physician. 20 C.F.R. § 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion."). "Where a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (*quoting Mason*, 994 F.2d at 1066)); *see also Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

Plaintiff argues:

> The opinions from Claimant's treating source, Dr. Karen Medzoyan, were afforded little weight, without adequate explanation by the ALJ. The ALJ states that Dr. Medzoyan did not offer specific statements in support of her RFC, which is incorrect, as Dr. Medzoyan authored a separate letter on July 27, 2015, in support of her opinion that Claimant is unemployable, for a number of specific reasons, and further that he is not even capable of living independently, as she had determined based upon her individual treatment of Claimant since 2008. (Admin.

Tr. 326-328). In addition, the ALJ fails to analyze the factors in 20 C.F.R. §§ 404.1527(c)(2), which is of particular importance in this matter, due to the absence of a Consultative Exam or Medical Expert in this case, leaving Dr. Medzoyan's opinions as the only ones of record which set forth specific non-exertional limitations regarding Claimant. (Exhibit A).

It is also important to note that at the time of the state agency psychological consultant rendered her opinion on June 20, 2016, she did so without the bulk of the medical records in this matter, particularly those which confirmed past and ongoing psychological issues and limitations in the years prior to and following Claimant's alleged onset date (Admin. Tr. 57).

Regarding the lack of any opinion of record which the ALJ relied upon regarding Claimant's non-exertional limitations, it is well established that "rarely can a decision be made regarding a claimant's residual functional capacity with an assessment from a physician regarding the functional abilities of the claimant. *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986). ("No physician suggested that the activity Doak could perform was consistent with the definition of light work set forth in the regulations and therefore the ALJ's conclusion that he could is not supported by the record). The only RFC of record in this matter was created by a Single Decision Maker (hereinafter "SDM"), who made findings that Claimant has several non-exertional limitations, which were adopted by the ALJ as his RFC (the RFC from the ALJ is identical, in some respects, to the one from the SDM). (Admin. Tr. 57).

Based upon the above, the ALJ erred in failing to afford proper weight to the treating source opinion, as opposed to state agency consultant. If the ALJ had weighed the factors in 20 C.F.R. §§404.1527(c)(2), in considering dr. [sic] Medzoyan's opinions, he would have noted that Dr, Medzoyan treated Claimant for a period in excess of ten (10) years, on a bi-monthly basis, as a psychiatrist, who not only examined and evaluated Claimant, but also prescribed medications for Claimant, placing her in the best position to offer an opinion regarding the effect of Claimant's mental-health and developmental impairments upon Claimant's ability to work. It should also be noted that this treating

occurred during a period of time when Claimant was focusing in his
treating on attempts to work, and services that were offered related
thereto, placing Dr. Medzoyan in an even better position to render these
types of opinions, as opposed to the State Agency medical consultant.

(Doc. 12, pp. 19-21).

In response, the Commissioner argues:

As an initial matter, Plaintiff's reliance on Dr. Medzoyan's April 26,
2018 opinion by attaching it to his brief is entirely inappropriate and
should not be considered by this Court (Pl. Br. at 11, 19, 22; Pl. Ex. A).
The propriety of the ALJ's decision can only be judged based upon the
evidence that was actually before the ALJ. *Matthews v. Apfel*, 239 F.3d
589, 593-95 (3d Cir. 2001). Plaintiff's Exhibit A post-dates the ALJ's
decision and was not part of the administrative record in this case. *See*
Tr. Index 1-3. Plaintiff did not present this evidence to the Appeals
Council, much less comply with the stringent requirements of 20 C.F.R.
§ 416.927 (consideration of additional evidence), which requires good
cause for the failure to submit it, **and** a reasonable probability of a
different outcome.

On July 25, 2015, approximately eight months before the start of the
relevant period, Dr. Medzoyan wrote a letter on Plaintiff's behalf (Tr.
326-28). She opined that the degree of Plaintiff's social deficits and
chronic mood disorder made him incapable of sustaining full-time work
(Tr. 328). She also opined that he was currently incapable of living on
his own, but this could be reassessed in the future (Tr. 328).

An ALJ is not required to uncritically accept a treating doctor's opinion.
Rather, the weight an ALJ affords an opinion depends on several factors
such as wither the opinion is made by a specialist, a treating source, is
on an administrative finding reserved to the Commissioner, is
supported by the medical evidence, and is consistent with the other. 20
C.F.R. § 416.927.

The ALJ acknowledged that Dr. Medzovan was a highly trained
specialist who was Plaintiff's long-term treating psychiatrist (Tr. 26).
This alone undermines Plaintiff's incorrect claim that the ALJ failed to

Page 18 of 22

analyze 20 C.F.R. § 416.927's factors (Pl. Br. at 19). The ALJ explained that despite those factors, her opinion was worth little weight because it was rendered many months prior to the period at issue (Tr. 26). As such, it did not offer sufficient insight into Plaintiff's functioning during the relevant period. Indeed, the opinion was at odds with Dr. Medzoyan's observations of Plaintiff's functioning after the application date, which—as the ALJ pointed out—improved to the point of ceasing mental health treatment altogether as of May 2016 (Tr. 26, 594-99). The ALJ correctly found Dr. Medzoyan's opinion inconsistent with Plaintiff's lack of treatment (Tr. 26).

The ALJ repeatedly noted that Plaintiff's mental status examinations were largely normal and his symptoms improved (Tr. 21-22,24-25, 470, 542, 550, 553, 560, 563, 568, 571, 581, 584, 587, 592, 594-601). Importantly, four months after her letter opinion and closer to the relevant period, Dr. Medzoyan opined that Plaintiff was reluctant and unmotivated to work because it would cut into attending tournaments (Tr. 490, 497). And, during the relevant period, she indicated that Plaintiff's status was stable (Tr. 594-99). Therefore, Dr. Medzoyan's July 2015 opinion was inconsistent with her treatment notes dated closer to and during the relevant period. *See* 20 C.F.R. § 416.927(c)(3)-(4) (supportability and consistency).

The ALJ also correctly noted that Dr, Medzoyan's opinion was worth little weight because it was vague as it failed to address specific limitations in work-related terms (Tr. 26). *See* 20 C.F.R. § 404.1527(a)(2) (A medical opinion is a statement from a physician that reflects judgments about the nature and severity of an impairment, including symptoms, diagnosis, and prognosis about what a claimant can still do despite impairments). Therefore, the opinion offered no insight into what Plaintiff remained capable of doing despite his functional limitations.

The reasons set out above constitute such relevant evidence as a reasonable mind might accept as adequate to support giving the opinion little weight, *see Biestek*, 139 S.Ct. at 1157. In addition to those valid reasons, the opinion was on an issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e) (A physician's statement that the applicant is

Page 19 of 22

"unable to work" invades the province of the Commissioner and does not have "any special significance.").

It was reasonable for the ALJ to resolve the conflict in opinion evidence in favor of Dr. Banks's opinion, which was consistent with the evidence and offered function-by-function limitations (Tr. 26, 55-57). *See Coleman v. Comm'r of Soc. Sec.*, 494 Fed. App'x 252, 254 (3d Cir. 2012) ("Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason.").

Plaintiff inaccurately asserts (twice) that Dr. Medzoyan's opinion was the only one of record setting forth non-exertional limitations (Pl. Br. at 19 and 20). Dr. Banks offered such an opinion, and the ALJ was entitled to rely on it. In addition, his suggestion that a physician must have made the particular RFC assessment that an ALJ adopts (Pl. Br. at 19-20) is incorrect. *Titterington v. Barnhart*, 174 Fed. App'x 6, 11 (3d Cir. 2006) ("Surveying the medical evidence to craft an RFC is part of an ALJ's duties."). "The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler*, 667 F.3d at 361. *See also Mays v. Barnhart*, 78 Fed. App'x 808, 813 (3d Cir. 2003).

This Court should uphold the ALJ's evaluation of Dr. Medzoyan's opinion because he discussed the substantial evidence that supported it.

(Doc. 13, pp. 20-25).[4]

---

[4] The Commissioner suggests that after Dr. Medzoyan issued her letter, she opined that "Plaintiff was reluctant and unmotivated to work because it would cut into attending tournaments." (Doc. 13, p. 22) (citing Admin. Tr. 490, 497). This is a mischaracterization of the record. The treatment records cited to support their position are by John Pachecko, M.A.  From these records, Mr. Pachecko is an outpatient therapist at Pennsylvania Counseling Services, Inc. His therapy notes document a goal of preparing Mr. Meyer emotionally for work for many months, a

At the outset, I note that the Commissioner is correct that there were two medical opinions of record that evaluate Plaintiff's non-exertional limitations before the ALJ; the letter by Dr. Medzoyan, and an RFC assessment by nonexamining State agency psychologist Sandra Banks, Ph.D. However, Plaintiff is correct that the ALJ did not accurately characterize Dr. Medzoyan's letter when he described it as "a vague declaration that does not contain any specific limitations in work-related terms." (Admin. Tr. 26). Dr. Medzoyan describes a history of social deficits (including being bullied, significant anger management issues, multiple instances where Plaintiff used physical violence against classmates, expulsion from school) and suggests that Plaintiff would be unable to function without special supervision (he required a therapeutic aid in school, and would not be able to live independently) and that his depression would result in an inability to maintain regular attendance (multiple episodes of school refusal due to severe depression). Furthermore, I find that the ALJ's conclusion that Plaintiff stopped treatment in May 2016 is not supported by the record. Nothing in the treatment notes cited by the ALJ suggests that Plaintiff did not continue treatment. May 2016 appears to be where the treatment notes submitted end. The ALJ did not make any inquiry at the fifteen-minute

---

therapy that was not successful. Dr. Medzoyan did not write or sign off on the records cited by the Commissioner.

administrative hearing about whether Plaintiff had stopped treatment, or if so why he did. Accordingly, I find that the ALJ's stated rationale for discounting Dr. Medzoyan's letter is not supported by the record. This error requires remand.

        C.                PLAINTIFF'S REMAINING ARGUMENTS

Because I have found a clear basis for remand in this case, I need not address Plaintiff's remaining arguments. To the extent any other errors exist, they may be addressed on remand.

V.        CONCLUSION

IT IS ORDERED that Plaintiff's request for relief is GRANTED as follows:

(1)      The final decision of the Commissioner is VACATED.

(2)      This case is REMANDED to the Commissioner to conduct a new administrative hearing pursuant to sentence four of 42 U.S.C. § 405(g).

(3)      Final judgment will be issued in favor of Robert Abram Meyer, III.

(4)      An appropriate order shall issue.

Date: August 7, 2020                        BY THE COURT

                                    *s/William I. Arbuckle*
                                    William I. Arbuckle
                                    U.S. Magistrate Judge